UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| In re<br><br>Creative Technologies, LLC,<br><br>                Debtor. | Chapter 11<br><br>Case No. 24-33934 |

**RESPONSE TO COURT'S ORDER TO SHOW CAUSE**

      Creative Technologies, LLC ("Debtor"), submits its response to the Court's Order to Show Cause [Dkt. 46] signed on October 2, 2024. The Court has set a hearing on Wednesday, October 23, 2024, at 1:30 pm. (the "Hearing") to determine if cause exists under 11 U.S.C. § 1104(a) for the appointment of an interim chapter 11 Trustee.

      As the Court is aware, the Bankruptcy Code establishes two independent grounds for appointment of a Chapter 11 trustee:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . .
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . .

11 U.S.C. § 1104(a). Debtor opposes the appointment of a trustee because there is not cause to appoint one under Section 1104(a). In support of this response, Debtor has attached a Declaration from Eric Camm as **Exhibit A** and a Declaration of Brian Weiss as **Exhibit B**, and Debtor states the following *eight* points.

      Debtor *first* apologizes for any initial confusion at the outset of these very large and complex involuntary cases, including for failing to adhere to the Court's Local Rules or other procedures, and acknowledges that undersigned counsel and counsel to Turning Point Strategic

Advisors, Debtor's Receiver, must endeavor to strictly adhere to such rules. However, initial mistakes by counsel are not "fraud dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management;" they are mistakes by lawyers that have already been and will continue being corrected. Moreover, Debtor is retaining local counsel to further assist with compliance with Local Rules and practice.

*Second*, Debtor is already managed and controlled by independent and experienced restructuring professionals, including new Chief Restructuring Officer, Brian Weiss and Force Ten Partners, LLC to support the CRO (the "CRO" or "Force 10"), who have managed dozens of large and complex chapter 11 cases across the country and has the confidence of stakeholders. Materials explaining the credentials of Force 10 and its co-founder, Brian Weiss, are attached to the Weiss Declaration. The CRO was engaged on October 14, 2024 and has been working since even before that date diligently to get up to speed on all the various aspects of this very large and convoluted case. The CRO is developing a rapport with existing staff and a variety of stakeholders, and has already established a strategy for how to approach this case (and those of its affiliates whose cases are assigned to Judge Norman and with which there is a joint administration motion filed, Water Station Management LLC ("Water Station") and Refreshing USA LLC ("Refreshing," together with Debtor and Water Station, "Debtors")) to maximize value of the estates for the benefit of its creditors.

*Third*, Debtor's independent manager, Eric Camm of Turning Point, who has been named corporate manager of Debtor by a state court in Washington State (and already affirmed as control person by Judge Norman in the Water Station and Refreshing cases), is in the process of hiring a second independent manager—this one fully independent from the real property owner affiliate entities (combined, "Ideal") that Turning Point authorized to file chapter 11 cases

in the Eastern District of Washington in early September—with extensive chapter 11 experience to oversee Force 10's work in this case. That new independent manager will be retained before the Hearing. Thus, there will be three restructuring professionals in full control of Debtor by the time of the Hearing, including a CRO and two independent managers, who will combine to have more than 50 years of restructuring experience. None of those persons have ever committed any sort of fraud, dishonesty, incompetence, or gross mismanagement, with this Debtor or any other, despite extensive involvement with such Debtors. All fully understand their fiduciary obligations to the estate and will be committed to working in tandem to maximize value for the estate and its creditors. Indeed, the steps outlined in the paragraph above and here accomplish everything appointing a Chapter 11 trustee would potentially accomplish, and the CRO and Mr. Camm have already expended dozens and hundreds of hours, respectively, getting up to speed and getting familiar with the various issues and constituents in the case. Appointing a trustee would do nothing but set the cases back and cause additional delay.

*Fourth*, this case is directly related to Water Station and Refreshing's cases. The Debtors are all part of the same business operation. Moreover, there are copious allegations that management prior to the Receivership began commingled funds among the Debtors. It would be severely disruptive (and unnecessarily expensive) to Debtors to add a trustee over just Debtor; and there is no suggestion of a trustee by any party or the Court over Water Station and Refreshing.

*Fifth*, there are further allegations that Debtors' combined or commingled funds were used for the benefit of Ideal to purchase all their real property. It would be detrimental to Debtors' estates and Ideal's estates as well (whose chapter 11 cases are now controlled by a separate chief restructuring officer and a soon-to-be-appointed independent manager

restructuring professional), to appoint a trustee for just Debtor—and even all the SDTX Debtors—as the CRO has developed a good relationship with Ideal's CRO already. Undersigned counsel's firm has also worked with counsel to Ideal on several cases and other projects over many years. Together, the group has developed a working cooperation agreement term sheet between Debtors and Ideal that will reduce administrative expenses, improve Debtors' liquidity position, and create an environment that will maximize value for creditors. Indeed, perhaps the biggest single asset of Debtors' estates is their $31.7 million receivable against Ideal, which Debtors and Ideal project will produce a significant eight-figure return if Ideal's cases are not sidetracked by unnecessary litigation and Debtors can cooperate to move their personal property from Ideal's real property to facilitate sales of those properties, and rearrange the parties' leasing relationship. Adding a trustee into this equation could upset a lot of this trust and cooperation Debtors and Ideal have worked hard to build in the last few weeks.

*Sixth*, through the CRO, Debtors have negotiated with non-Debtor affiliates for the transfer of more than a dozen pieces of real property from them into Debtors' estates. That is millions of dollars of equity coming into the estates due to the work of Mr. Camm and the CRO just in the short time since undersigned counsel and the CRO were engaged. Providing huge benefit to the estates and their creditors without the significant costs and delay of litigation.

*Seventh*, Mr. Camm is located in the State of Washington, where Debtors' headquarters are located and the entities are domiciled. The majority of Debtors' books and records and management staff are located, as well as a disproportionate amount of the assets for a company that operates nationwide. The CRO is located in Southern California, close to a significant portion over Debtors' operations in California, Arizona, and Nevada, and where almost all of the balance of the books and records are located, as well as substantial assets. Their locations

provide more efficient access to those books and records, staff, and assets, than a trustee located in Houston, where Debtor has very little connection at all.

*Eighth*, and finally, Debtors are in the process of finding local counsel to assist with filings in this Court.  While undersigned counsel has practiced before this Court for many years in a variety of capacities, including as lead associate on large and complex debtor cases, his colleagues and staff have not, and it seems it may be in the best interest of the estates and efficiency to have someone local to double-check all filings for local rules compliance and ensure Debtors are managing the cases themselves in a manner consistent with the Court's expectations (despite the threat of additional administrative cost for adding another professional firm).  Debtors did not retain local counsel already for two reasons: (A) A retainer for local counsel is not possible right now not just because paying a retainer is a non-ordinary course payment that itself needs approval, but also because Debtors simply cannot afford the added expense.[1]  (B) Debtors intend to file a motion to change venue to the Eastern District of Washington so their cases can be with the same judge as the Ideal cases.  Debtors at one point in September expected that venue change would occur before the orders for relief on the involuntary petitions were granted, but the global agreement that included the venue change was not consummated before Judge Norman granted the orders for relief in Water Station and Refreshing, and has since at least partially collapsed.  Debtors were still even a week ago expecting to file the venue motion expeditiously, but multiple parties have raised concerns about changing venue, and Debtors cannot afford the time, energy and resources of having an expedited venue fight right now, especially as this Court is obviously an adequate forum at least on a temporary basis.  Debtors recognize their cases are separate from Ideal's, but the cases are

---

[1] Undersigned counsel and the CRO are working on these cases without a retainer.

related in many ways and it will increase efficiency greatly for all to have all of the cases in one court. Suffice it to say, because Debtors cases will be staying with this Court for the immediate future, Debtors have found local counsel who will work with Debtors under the current circumstances, and will be filing a retention application for them in short order.

For these reasons and more, there is not cause to appoint a trustee under Section 1104(a) of the Bankruptcy Code.

Dated:  October 18, 2024.

       Respectfully submitted,

       TONKON TORP LLP

       By s/ Danny Newman
          Danny Newman, Texas Bar No. 24092896
          Ava L. Schoen, *Pro Hac Vice*
          Tonkon Torp LLP
          Attorney for Debtors
          888 SW Fifth Ave., Suite 1600
          Portland, OR 97204
          Telephone: (503) 221-1440
          Attorneys for Debtors

## RULE 9013-1(i) CERTIFICATE

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

       By  s/ Danny Newman
          Danny Newman

044904\00001\17635222v2